**G & G STEEL ERECTORS, INC., and State Insurance Fund, Petitioners.**

v.

**Mario GUTIERREZ, Jr., and Workers' Compensation Court, Respondents.**

**No. 61026.**

Court of Appeals of Oklahoma, Division No. 2.

May 29, 1984.

Released For Publication by Order of Court of Appeals June 29, 1984.

Sam Hill, Steven Vincent, State Ins. Fund, Oklahoma City, for petitioners.

Terrel B. DoRemus, Tulsa, for respondents.

MEANS, Presiding Judge.

Employer G & G Steel Erectors, Inc., appeals the judgment of the Workers' Compensation Court. The trial judge awarded a sum for disfigurement in addition to an amount for permanent total disability.

This appeal concerns the sole issue whether disfigurement may be awarded over and above an award of 100 percent permanent total disability. Having reviewed the record and the applicable law, we affirm.

The facts are not in dispute. Claimant Mario Gutierrez, Jr., was injured on May 14, 1980. He was holding a metal joist beam, which was being lifted by a crane, when the crane arm struck a high voltage line, resulting in severe high voltage electrical burns. The electricity entered his right hand, left face and head, and exited through the right fifth toe. The parties stipulated before trial that Gutierrez was a covered employee and sustained accidental injury arising out of and in the course of his employment.

The transcript of the court's hearing on June 28, 1983, reflects the judge's observations after viewing the claimant's body.

BY THE COURT: Dr. Atkins [*sic*] February 17 report is admitted as Claimant's Exhibit 1 and for the record, the Court did view in Chambers the different areas of disfigurement starting with the Claimant's face. There is approximately a four inch scar which starts at the top of the right eye and runs down across the nose into the left cheek. The scar appears to be caused from a flap where a plate has been inserted into the head and runs around the top of his head and forehead into the hairline on top of his head. Claimant has burns on his shoulder, forearm, both right and left arms, has approximately a four inch scar near the collar bone on the left side of his chest, the left side of his stomach has an area that appears to be eight by seven which is due to a skin graft, a donor site; on the outside of the left leg there are severe burns and the right leg was used for a skin graft donor site. He has two of them which combine and form an area of ten by six inches. On the right foot he has the complete loss of the little toe and the big toe on the left foot had to be amputated right at the top of the outside of the big toe.

Dr. Atkins' report detailed his physical examination, which revealed the complete loss of the left eye, skin grafting and "much scarring of the tissue." His report also reflects the various operations performed on Gutierrez, including cataract surgery on the right eye, amputation of the right fifth toe, and a bifrontal craniectomy.

The trial judge, in his order of August 24, 1983, found Gutierrez sustained the following injuries:

THAT as a result of said injury, claimant sustained 100 per cent permanent partial disability to the LEFT EYE; 100 per cent permanent partial disability to the RIGHT EYE; 3 per cent permanent partial disability to the RIGHT FOOT due to the LITTLE TOE injury; 20 per cent permanent partial disability to the LEFT FOOT due to the GREAT TOE injury; 15 per cent permanent partial disability to the RIGHT LEG and 15 per cent permanent partial disability to the LEFT LEG. Due to the injury to claimant's eyes, he is statutarily [*sic*] totally and permanently disabled and therefore entitled to permanent total disability at

the rate of $110.00 per week commencing as of MARCH 18, 1983, until further order of this Court, 22.5 weeks have accrued and shall be paid in a lump sum of $2,475.00

The judge also found:

THAT as a result of said injury, claimant suffered serious and permanent disfigurement as follows:

| | |
|---|---|
| (1) Head | $2,000.00 |
| (2) Face | 3,000.00 |
| (3) Left Shoulder and Arm | 1,250.00 |
| (4) Right Shoulder and Arm | 1,250.00 |
| (5) Chest | 500.00 |
| (6) Stomach | 2,000.00 |

As stated in its brief, Employer has not appealed the award of permanent total disability, but only the award of $10,000 for disfigurement in addition to the amounts awarded for permanent total disability.

Employer refers to the pertinent provisions,[1] of 85 O.S.1981 § 22, and its former provisions together with *Garrett's Furniture v. Morgan*, 498 P.2d 1380 (Okla.1972), in support of its position that disfigurement may not be awarded in addition to permanent total disability.

In response to Employer's argument, Gutierrez draws our attention to the amendments of section 22 relating to disfigurement. His position is that the legislative intent in removing the 500 week limitation and increasing the recoverable benefit to $10,000 signals an awareness by the legislature of inequities under the old act and a change in the scope of damages to be compensated. He asserts that the legislature did not intend to preclude awarding disfigurement benefits solely because compensation for permanent total disability had been awarded.

As support for this position, Claimant cites several Oklahoma cases [2] wherein disfigurement was recognized as the basis for a separate award. However, none of the cases cited involve the allowance of an award for disfigurement in addition to an award for *total* permanent disability.

The latest consideration of the instant issue by the Oklahoma Supreme Court was in *Garrett's Furniture*. There the court held that under 85 O.S.1971 § 22, a claimant was not entitled to an award for permanent disfigurement in addition to the allowance of 500 weeks of compensation for total permanent disability. We note that the *Garrett's Furniture* decision was based on the then specific language of section 22, under the heading of "Permanent Total Disability," which provided that compensation would be paid "during the contin-

---

1. Prior to January 1, 1976, 85 O.S.Supp.1976 § 22(1), provided:

    **Schedule of compensation.**—The following schedule of compensation is hereby established:

    1. Permanent Total Disability. In case of total disability adjudged to be permanent, sixty-six and two-thirds percent (66⅔%) of the average weekly wages shall be paid to the employee during the continuance of such total disability not exceeding five hundred (500) weeks; loss of both hands, or both feet, or both legs, or both eyes, or any two (2) thereof, shall, in the absence of conclusive proof to the contrary, constitute permanent total disability. In all other cases, permanent total disability shall be determined in accordance with the facts.

    Title 85 O.S.1981 § 22, has provided the following since January 1, 1965:

    **Schedule of compensation.**

    The following schedule of compensation is hereby established:

    1. Permanent Total Disability. In case of total disability adjudged to be permanent, six-

ty-six and two-thirds percent (66⅔%) of the employee's average weekly wages shall be paid to the employee during the continuance of such total disability.

The disfigurement portion of 85 O.S.1981 § 22, was last amended effective January 1, 1976. This changed the amount of compensation from $3,000 to $10,000, and provides:

    In case of an injury resulting in serious and permanent disfigurement, compensation shall be payable in an amount to be determined by the Court, but not in excess of Ten Thousand Dollars ($10,000.00); provided, that compensation for permanent disfigurement shall not be in addition to the other compensation provided for in this section, but shall be taken into consideration in fixing the compensation otherwise provided.

2. *Safeway Stores, Inc. v. Hart,* 550 P.2d 1327 (Okla.1976); *Peerless Rock Co. v. Bowers,* 267 P.2d 556 (Okla.1954); *Caddo County v. Hartman,* 196 Okl. 276, 164 P.2d 617 (1945); *Seneca Coal Co. v. Carter,* 85 Okl. 220, 205 P. 495 (1922).

uance of such total disability *not exceeding* five hundred weeks." A comparison of the statute as it then existed with the current version passed in 1978 reveals that this particular language has now been eliminated.

The earlier cases of *Oklahoma Natural Gas Corp. v. Smith*, 147 Okl. 221, 296 P. 454 (1931), and *Federal Mining & Smelting Co. v. Warman*, 145 Okl. 281, 292 P. 865 (1930), cited in *Garrett's Furniture*, also relied upon the limiting language of section 22, in concluding that the maximum compensation allowable for total disability, including disfigurement, was the amount provided by the statute for permanent total disability. Absent such limiting language in the current statutes, we do not find these cases determinative of our decision in the instant appeal.

Rather than providing any limitation on an award for permanent total disability, the pertinent provisions of section 22 now read:

The following schedule of compensation is hereby established:

1. Permanent Total Disability. In case of total disability adjudged to be permanent, sixty-six and two-thirds percent (66⅔%) of the employee's average weekly wages shall be paid to the employee during the continuance of such total disability.

. . . .

In case of an injury resulting in serious and permanent disfigurement, compensation shall be payable in an amount to be determined by the Court, but not in excess of Ten Thousand Dollars ($10,000.00); provided, that compensation for permanent disfigurement shall not be in addition to the other compensation provided for in this section, but shall be taken into consideration in fixing the compensation otherwise provided.

We find no language in section 22 which tends to eliminate the applicability of disfigurement compensation to a claimant awarded permanent total disability. Although the language "shall not be in addition to," contained in the second paragraph above, can be seen as a limitation, this language was clearly explained as to its applicability in *Seneca Coal Co. v. Carter*, 85 Okl. 220, 221–22, 205 P. 495, 496 (1922):

The phrase, "should not be in addition to other compensation provided for in this section," makes plain the intention of the Legislature that the compensation allowed for permanent disfigurement has reference to other injuries not compensable as specific injuries provided for specifically, such as the loss of an eye, hand, or foot, etc. The phrase, "but shall be taken into consideration in fixing the compensation otherwise provided," vests the commission with jurisdiction in allowing compensation for a permanent disfigurement to consider any compensation that may have been allowed for a specific injury. For instance, just as in the case at bar, where the injured employee has been compensated for the loss of an eye, in awarding compensation for a permanent disfigurement of the face to the extent that the loss of an eye has to do with permanent disfigurement, the commission, in making the award, must eliminate from such disfigurement to the face the loss of the eye, or such loss as the impaired eye contributed to the disfigurement of the face. The loss of an eye, having been compensated under the first part of the statute, supra, prescribing a specific amount for the loss of an eye, is not to again be compensated as constituting a part of a permanent disfigurement.

Thus, using the analysis in *Seneca Coal*, Gutierrez could not be awarded disfigurement for those parts of his body determined to constitute the permanent total disability. The award for disfigurement to Gutierrez' body was clearly not for disfigurement resulting from the loss of his eyesight, the subject of the permanent total disability.

Award sustained.

BACON, J., and STUBBLEFIELD, J. (sitting by designation), concur.